IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHAWN J. HEIDENREICH,

                Plaintiff,

   v.                                                   OPINION & ORDER

NANCY A. BERRYHILL,                               17-cv-235-jdp
Acting Commissioner of Social Security,

                Defendant.

---

Plaintiff Shawn Heidenreich seeks judicial review of a final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, finding him not disabled within the meaning of the Social Security Act. Heidenreich contends, principally, that remand is warranted because the Administrative Law Judge (ALJ): (1) improperly discredited his testimony regarding his subjective symptoms of pain and (2) improperly assigned weight to various medical opinions. Because the ALJ relied on "significant inconsistencies in the record" to discredit Heidenreich's testimony, but failed to adequately connect the evidence to these perceived inconsistencies, the court will remand the case for further proceedings.

BACKGROUND

**A. Procedural background**

Heidenreich was born in 1969 and has a high school education. He had a brief period of employment in 2014, but has not otherwise worked since 2009. He applied for disability insurance benefits in September 2012, alleging a disability onset date of May 27, 2012. His application was denied both initially and upon reconsideration.

After a hearing, the ALJ issued a written opinion denying Heidenreich's claim in full. The Appeals Council denied his request for review, making the ALJ's decision the final determination of the Commissioner. Heidenreich now appeals, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## B. Relevant medical history

Heidenreich underwent decompression surgeries on the lumbar spine in 2006 and 2010. In May 2012, he sought treatment for continuing back pain from his primary treating physician, Thomas Reiser, MD, and an x-ray showed advanced degenerative disc space narrowing at L5-S1. On August 8, 2012, Heidenreich visited Dr. Reiser and complained of "low back pain and right leg pain." **R. 384.**[1] Dr. Reiser restricted him to lifting 15 to 20 pounds, sitting for 3 to 5 hours, and standing 4 to 6 hours. On October 17, 2012, Dr. Reiser recommended that Heidenreich undergo decompression and fusion surgery to address "the fact [that] he continues to have significant lower back pain." **R. 382.**

Throughout 2013, Heidenreich sought primary care treatment at the St. Croix Regional Medical Center. First, on January 4, he had a scheduled office visit to refill his diabetes medication and told his provider he had a "low back injury" that caused "burning and numbness in his toes," but that he was waiting for "Workmen's Comp. to approve surgery." **R. 472.** Next, on September 25, he had another office visit in order to refill his pain medication, Hydrocodone. **R. 467.** At this visit he reported suffering persistent, "sharp" lower back pain. Finally, on October 24, he sought treatment for "musculoskeletal pain" in his lower back after being involved in a motor vehicle accident, and was prescribed muscle relaxants. **R. 462.**

---

[1] Record cites are to the administrative record, Dkt. 10.

Heidenreich returned to Dr. Reiser on February 19, 2014, again complaining of persistent back pain. An x-ray showed no more than mild degenerative changes since 2012. An April 7, 2014 MRI scan showed moderate-to-severe right and mild left foraminal narrowing at L5-S1 and some evidence of enhancing scar tissue at L5-S1. Heidenreich elected to proceed with surgery and underwent an anterior-posterior fusion at L5-S1 on June 27, 2014. At a surgical follow-up appointment on August 6, 2014, he complained of ongoing back and left leg pain. An x-ray indicated that the surgery had achieved excellent fusion, but a CT scan indicated that a loosening screw may have been causing mechanical pain.

Before performing a revision surgery to remove this loose screw, Dr. Reiser sent two letters to Heidenreich's counsel opining on his disability status. First, on October 8, 2014, Dr. Reiser wrote to Heidenreich's attorney stating Heidenreich was "totally disabled" due to "instability, persistent pain, severe degenerative disc disease of lumbar spine L5-S1, [and] failure of prior surgeries with persistent mechanical back pain necessitating a fusion." **R. 416.** Three weeks later, on October 29, 2014, he sent another letter revising his opinion, this time stating Heidenreich met the requirements of Listing 1.04 due to chronic pain and radiculitis. **R. 438.**

The revision surgery was performed on November 11, 2014, and the loose screw was removed from Heidenreich's back. At a follow-up appointment on November 26, 2014, Heidenreich reported that his leg pain had improved but that he still had residual numbness. On February 18, 2015, Dr. Reiser noted that Heidenreich's x-ray looked satisfactory, motor strength and sensation were intact, and his straight leg raise was negative. Based on this, Dr. Reiser recommended that Heidenreich begin physical therapy (PT).

Heidenreich began PT and reported that while he still had back pain, he had noticed some improvement post-surgery. At his eighth PT session, on March 19, 2015, he reported slow improvement but was still weak, sore, and had a "stiff lumbar spine." **R. 481.** At his sixteenth and final PT session on April 20, 2015, he had a "very stiff lumbar spine" and showed "slight improvement but very minimal," leading his provider to conclude that "PT at this time does not appear to be beneficial." **R. 493.**

## C. Administrative hearing

The ALJ held a hearing on June 3, 2015. Heidenreich, represented by counsel, appeared and testified by telephone. **R. 28.** Andrew Steiner, MD, an impartial medical expert, and Beverly E. Solyntjes, an impartial vocational expert (VE), appeared and testified in person. The ALJ asked Heidenreich about his work history, daily activities, and the reasons why he was unable to work.

Heidenreich testified that he had worked as a Computer Numerical Control operator and furniture assembler in 2008, but was no longer able to work due to the problems he was having with his legs and lower back. He stated that he was unable to stand or walk for more than one hour at a time and could not sit down for more than 30-45 minutes at a time. **R. 34.** Further, after any combination of sitting, standing, and moving around for more than 3 or 4 hours, he had to lie down for 1–2 hours. **R. 35.**

Dr. Steiner testified, beginning with a summary of Heidenreich's medical record. He noted that the record contained evidence of the following relevant impairments: obesity; back pain with lower extremity radiation attributed to degenerative disc disease; and ongoing low back pain attributed to severe degenerative disc disease. **R. 45.** He stated that Heidenreich did not meet the medical requirements of Listing 1.04 due to a lack of "evidence of a radicular loss

of that distribution on an ongoing basis." **R. 46.** He then opined that the record supported a general "sedentary residual" work-related limitation with "additional limitations on bending, twisting, stooping, kneeling, and crouching to occasional only." **R. 47.** Further, he found that an allowance for a brief change of position hourly and only occasional overhead work would be appropriate.

The VE testified that an individual with a sedentary work limitation could not perform Heidenreich's past relevant work. **R. 50.** The ALJ asked whether there were any jobs in the national economy that would accommodate an individual of Heidenreich's age and education with a sedentary work limitation, subject to the following restrictions: no more than six hours of sitting and two hours of walking or standing in an eight hour workday; lifting up to ten pounds occasionally; no more than occasional bending, twisting, stooping, kneeling, crawling, crouching, or overhead work; and a brief change of position hourly. **R. 50.** The VE identified the following jobs: document preparer, film touch-up inspector, and touch-up screener for printed circuit boards. **R. 51.** The ALJ asked whether these jobs would be available to an individual who needed to lie down for 1-2 hours every 3 hours or miss work once a week because of pain. The VE testified that they would not be. **R. 51.**

### D. ALJ decision

The ALJ, Mary M. Kunz, issued a decision on August 11, 2015, concluding that Heidenreich was not disabled within the meaning of the Social Security Act. Specifically, the ALJ determined that Heidenreich did not meet the requirements of Listing 1.04 and had the ability to perform sedentary work.[2] **R. 15.** The ALJ provided for six hours of sitting and two

---

[2] 20 C.F.R. § 404.1567(a) defines sedentary work as "work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount

5

hours of standing or walking in an eight-hour workday, along with a brief change of position hourly. She set additional restrictions of only occasional bending, twisting, stooping, kneeling, crawling, crouching, or overhead work. **R. 15–16.**

In reaching her conclusion, the ALJ did not credit all of Heidenreich's subjective complaints of pain on the ground that there were "significant inconsistencies in the record as a whole." **R. 16.** She also noted that the his subjective complaints were inconsistent with the "objective medical evidence and course of medical treatment," as well as the "claimant's daily activities." **R. 16, 18.** The ALJ weighed the medical opinions discussed above, assigning the "greatest weight" to Dr. Steiner's testimony, "some weight" to Dr. Reiser's treatment notes, and "no weight" to Dr. Reiser's October 2014 letters. **R. 17–18.**

OPINION

The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings, the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

---

of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

Even so, a district court may not simply "rubber stamp" the Commissioner's decision. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). For questions of credibility, this means a court must give "considerable deference" to the ALJ's determination, but still must overturn that determination if it is "patently wrong." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). An ALJ must also "adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

After reviewing the record, the court concludes that remand is warranted because the ALJ failed to adequately explain her credibility determination. Because on remand the ALJ may reconsider the medical opinions in this case, the court offers additional guidance on that issue as well.

## A. Credibility determination

Heidenreich's first argument is that the ALJ improperly discredited certain parts of his testimony that, if credited, would have led to a disability finding. Specifically, Heidenreich points to his testimony that his back and leg pain prevented him from sitting for more than 30–45 minutes at a time and required him to lie down for 1–2 hours after 3 hours of any activity. There is no dispute that, if this testimony is credited, Heindenreich would qualify as disabled.

An ALJ must follow a two-step process to evaluate a claimant's testimony regarding disabling pain. *See* SSR 16-3p; SSR 96-7p.[3] First, the ALJ must determine whether the record

---

[3] In 2016, the Commissioner issued SSR 16-3p, which updated SSRs 96-7p's guidance on symptom evaluation. SSR 16-3p eliminated SSR 96-7p's use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. Because this clarification did not substantively change 96-7p's guidance (both Rulings use the same two-step test and direct consideration of the same seven factors), this court need

7

shows a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. In this case, the ALJ did not discuss this issue, so the court assumes that the ALJ believed that Heidenreich's impairments could have caused him pain.

Second, the ALJ must evaluate the intensity and persistence of the alleged symptoms to determine the extent to which they limit the claimant's ability to work. At this second step, the ALJ must assess the credibility of the claimant's pain assertions by considering several factors, including: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; and the type, dosage, effectiveness, and side effects of any medication the claimant takes. *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p; SSR 16-3p. The ALJ must then give "specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ need not discuss every piece of evidence, but "must build a logical bridge from evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Here, the ALJ found Heidenreich's testimony regarding the extent of his pain was not credible because of "significant inconsistencies in the record as a whole." **R. 16.** She then identified and discussed three areas that contained perceived inconsistencies: the objective medical evidence and course of medical treatment, Heidenreich's daily activities, and Heidenreich's work history. The ALJ's analysis in each area was deficient, however, because she did not adequately connect the evidence to her conclusion that the record was significantly

---

not determine if SSR 16-3p applies retroactively to this case. *See, e.g., Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants.").

8

inconsistent with Heidenreich's testimony. Thus, this court is "left to ponder what exactly are these 'inconsistencies.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

First, the ALJ's discussion of the objective medical evidence and course of medical treatment noted Heidenreich's four back surgeries since 2006, his consistent complaints of back and leg pain, and his failure to show improvement after 16 PT sessions. The ALJ also mentioned Dr. Reiser's treatment notes, the results of various x-rays and MRIs, Heidenreich's use of prescribed pain medications, and various medical opinions (discussed in detail below). Although the ALJ listed this relevant medical history, she erred because she failed to explain how that history undermined Heidenreich's testimony. *See Zurawski*, 245 F.3d at 888 ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined.") (citation omitted).

For example, the ALJ mentioned Heidenreich's use of prescribed pain medication, Hydrocodone, but did not provide any further analysis. The court is left to wonder whether the ALJ doubts that the pain medication was necessary at all, whether she concluded his pain could be effectively managed by the medication, or whether she disregarded the effect of his medication all together. Similarly, this court is left to wonder what exactly the ALJ found inconsistent with Heidenreich's testimony and his consistent complaints of back pain that led to him undergoing four back surgeries. The ALJ may have concluded that Heidenreich consistently embellished his complaints of pain, she may have concluded that the back surgeries alleviated his pain, or she may have simply disregarded this portion of the record entirely. Because the ALJ did not connect the evidence to her conclusion, the court is not in a position to conduct a meaningful review.

Second, the ALJ did not adequately explain her conclusion that there were significant inconsistencies between Heidenreich's testimony and his daily activities. The ALJ's discussion began by listing Heidenreich's minimal daily activities, including "simple cooking, laundry, vacuuming, cleaning and mowing activities, driving, shopping, and payment of bills." **R. 18.** But there was no discussion of how these activities, or the manner in which Heidenreich performs them, undermined his testimony. That was an error because minimal daily activities, such as doing laundry or cooking, do not "necessarily undermine[] or contradict[] a claim of disabling pain." *Zurawski*, 245 F.3d at 887; *see also Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009) ("The ALJ mentions Stewart's ability to cook, clean, do laundry, and vacuum at her home, but those activities do not necessarily establish that a person is capable of engaging in substantial physical activity.").

The ALJ went on to discuss additional daily activities, but erred by merely noting that Heidenreich participated in them without acknowledging how these "activities [were] fairly restricted." *Zurawski*, 245 F.3d at 887. For instance, the ALJ noted that in a 2012 function report Heidenreich reported "enjoy[ing] fishing in a boat a couple times per year." **R. 18.** However, the ALJ didn't mention that Heidenreich qualified his fishing activity by stating that he could not sit in a boat for more than a half hour. **R. 327.** Similarly, the ALJ did not discuss other restrictions listed in the 2012 function report, including: an inability to sleep for more than 2-3 hours due to leg and back pain, trouble getting on and off the toilet, and the need to take frequent breaks while completing house and yard work. **R. 324–25.**

Finally, the ALJ noted that the claimant had an "inconsistent work history" and that this was "not a positive credibility factor." **R. 18.** The ALJ cited a brief period of work in 2014, but did not identify what this work entailed or elaborate on how it affected her assessment of

10

Heidenreich's testimony. The record reflects that this brief period of work in 2014 was at "Wild Bill's Sporting Goods & Spirit," but there is nothing that allows this court to evaluate what work Heidenreich performed or how that work either supports or undercuts Heidenreich's testimony. **R. 281–86.**

In sum, Heidenreich gave testimony at his hearing that, if credited, would have required a finding of disability. The ALJ found Heidenreich's testimony only partially credible, but she "failed to build a logical bridge between the evidence and [her] conclusion that [Heidenreich's] testimony was not credible." *Villano*, 556 F.3d at 562. On remand, the ALJ must give specific reasons for the weight given to any testimony, in accordance with the principles discussed above.

**B. Treating physician opinions**

Heidenreich also argues the ALJ did not give proper weight to the October 2014 opinions of his treating physician, Dr. Reiser. **R. 415-16, 438.** Having already found sufficient grounds for remand, the court need not address this argument in great detail. *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011). However, the court briefly addresses the argument as it may provide guidance to the ALJ on remand.

Social Security regulations assure claimants that "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). But an ALJ may not give controlling weight to a medical opinion on the ultimate issue of whether a claimant is disabled

because those determinations are reserved for the Commissioner (through the ALJ) to make. *See* 20 C.F.R. § 416.927(d).[4]

Even so, when a treating physician's opinion is not entitled to controlling weight, "the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Instead, the ALJ must consider the regulatory factors outlined in 20 C.F.R. § 404.1527(c) and then assign an appropriate weight to the opinion. *Id.* These factors include: the length of the treatment relationship; the nature and extent of the relationship; whether the opinion is supported by evidence or examination; consistency with the record as a whole; and specialization of the doctor. *Id.*; 20 C.F.R. § 404.1527(c)(2)–(5).

Here, the ALJ properly declined to give controlling weight to the portions of Dr. Reiser's opinions that were directed towards ultimate issues, such as the statement that Heidenreich was "disabled." **R. 415.** But she then assigned "no weight" to the entire opinion, relying primarily on a 16-month gap in the treatment relationship and the fact that Dr. Reiser had not found Heidenreich disabled in 2012. In doing so, the ALJ failed to analyze parts of Dr. Reiser's opinions that were potentially credible and should have been discussed using relevant § 1527(c) factors.

For example, Dr. Reiser's October 8, 2014, opinion stated that Heidenreich has had "low back pain dating back to 2009, when he had a discectomy . . . [he] underwent further decompression with a total facetectomy . . . [h]e has significant deterioration and disc disease at the L5-S1 level . . . [a]ll of this contributes to low back pain." **R. 415.** Because the ALJ did not discuss this part of the opinion at all, she did not address relevant factors such as Dr.

---

[4] 20 C.F.R. § 416.927(d) applies to all claims filed before March 27, 2017. *See* § 416.927.

12

Reiser's specialization, the length of the relationship he had with Heidenreich, and whether those findings were supported. On remand the ALJ should consider all parts of Dr. Reiser's opinion and analyze them using relevant factors before assigning the opinions a certain weight.

**C. Obesity**

Heidenreich briefly raises the issue of the ALJ's failure to consider the extent to which Heidenreich's obesity limited his ability to work. Dkt. 16, at 13. His argument is not well-developed, but this court does note that "under S.S.R. 02–1p the ALJ must specifically address the effect of obesity on a claimant's limitations." *Villano*, 556 F.3d at 562. On remand, the ALJ should discuss what, if any, effect Heidenreich's obesity has on Heidenreich's ability to work.

**D. Instructions for remand**

As discussed above, this court will remand this case so that Heidenreich's testimony is subjected to a proper credibility determination. On remand, the ALJ should also analyze all medical opinions, using the relevant factors before assigning them a weight, and should discuss the effect of Heidenreich's obesity in her RFC determination. This order does not mandate the ALJ make any particular finding on remand. But the ALJ must adequately explain her ultimate decision using the proper framework.

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Shawn Heidenreich's application for

disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered April 16, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge